COPY

Orig in R Quick file

**Complaint/Grievance May 20, 2024**

For the record my name is David Spencer and I am currently the Director of Marketing and Communications here at Lumbee River EMC. After much prayer and consideration, I would like to formally complain and make a grievance against my supervisor, Ruby Quick, VP of Member Services and Community Engagement.

In an attempt to express my concern in a rational, composed manner, I have prepared a statement that I want to read in its entirety outlining the details surrounding the incident. Copies will be made available afterwards.

On Thursday, May 16. 2024, I received a call from Ruby Quick, at 4:17 pm. The call lasted approximately 8 minutes where she proceeded to talk to me like I was her slave. I would say dog or her child but I believe her pets and children receive better treatment than I received that day. She could not be reasoned with, my opinion was not heard, and the only thing she wanted was to show that she was in charge. The call ended only after I yielded and asked Ruby what do you want to do. Her very nasty response was "there we go." Of all things, Ruby was irate about mulligans. I was tasked by her to plan and execute the annual golf tournament, and the detail worthy of her wrath was something so insignificant as a mulligan.

In previous years, LREMC would charge attendees $5 per mulligan but would not give them anything but a thank you. This year I wanted at the very least to put something in their hands to commemorate the transaction. On some level Ruby agreed because she made the suggestion to use white tickets, which I thought would be confusing as we already were using red tickets for the 50/50 raffle and door prizes. She also suggested coasters, keeping in mind the players were getting ready to play golf. At 2 mulligans per player, some teams would walk away with a stack of 8 coasters- very odd. My approach was the logical and practical one but because it was not hers she had a problem with it.

Ruby does not value the feedback of her staff or other colleagues in this organization. I believe her true agenda was to remind me that she is the boss, and regardless of how I felt about her ideas, it's best I get in line and do whatever she says no matter how stupid I think it is. Her response was extreme and unwarranted. The tone she used can only be described how combatants talk to each other before they come to blows in a bar fight. Because I am well tempered, and don't allow my emotions to dictate my response, I left that hostile encounter, avoiding further escalation.

I am a valued member of this staff, and I also serve and served in a number of civic and community organizations. I am also an ordained minister. I have worked with a number of executive teams reporting to senior level staff, often working directly with the heads of various organizations. In my professional experience, I have never been spoken to that way from a senior level member of any management team.

A Vice President at Lumbee River EMC should not be speaking to me or any employee that way. Our policy expressly prohibits this type of behavior. Ruby Quick is a bully who lacks basic people skills and does not know how to talk to people. Given my interactions with her, it's my assessment that she believes everyone around her is incompetent. Please note, I have a BA, two masters, and a number of certifications. I am very competent and as you can tell today very capable of expressing my thoughts in a peaceful coherent manner. Given this recent experience with Ruby, and others, it is my conclusion that she cannot.

It's ironic that I am attending training where the focus has largely been centered around how leadership should communicate with employees and colleagues. I cannot think of one person in this organization who would benefit more from this instruction than Ruby. I am the first one to recognize Ruby's ability to process information. She is good at developing processes and procedures but she lacks the basic human decency of treating others with respect.

I am not sure what all took place in Pembroke ahead of the incident. Whatever happened surrounding icing drinks led Brett Kinlaw (who was also in Raleigh) to believe I needed to connect with Derik Owens about it and what time he should arrive at the golf course. At some point I am told even Marie called Tyler to ask about his whereabouts. She was in Raleigh as well.

Tyler was told to disregard my instructions by Ruby, and that she would handle me. It was brought to my attention that moon pies were a hit at another golf tournament. Ruby's response to him was "if they want to get points with the CEO, let them get them (moon pies) themselves. Last I checked, we all are supposed to be on the same team. I am also told she asked the CEO about his experience with Mulligans. Sad really that so much effort and company resources were exhausted discussing a piece of paper.

Ruby has left me no other choice but to submit this complaint. I will not be spoken to that way by her or any employee at Lumbee River EMC. We have policies that clearly state that type of behavior is unacceptable. I took the liberty to review and highlight where those policies appear.

I also have the email and text message correspondence following the incident. If I don't speak up, she will do this again (I have documented other instances where Ruby's attitude was undesirable). But by speaking up I open myself up to retaliation from her.

Sadly, I do not believe this organization will protect her direct reports from her. It seems everyone is waiting for her to retire. I ask that leadership consider reorganizing so that I can await her retirement in another department reporting to someone else. I do not trust her. Once this grievance is made known history suggests she will retaliate against me.

Humbly submitted In Truth and Service,

David Spencer, MA, MS, Director of Marketing and Communication



Ruby Clark 6:00 PM
To: David Spencer >

## Mulligans

David,

I've done some research regarding mulligans at charity tournaments (Google is great!) and I do believe that we can use printed tickets next year if we would like and let players know how to "use" their mulligans. It turns out, they should turn them in when they use them. It's my understanding that this was a last-minute request/decision made today and I do think it required further conversation since that would be new to employees and to the golfers. (I don't recall us using tickets for mulligans in all the years I've been here, but I could be wrong.) Tyler can definitely add it to his notes for follow-up and planning next year.

I apologize for any frustration today over it but I was caught off guard when Tyler asked about the type of paper to use for them at such a late hour. He did stay busy this afternoon doing last minute items to prepare for tomorrow.

See you tomorrow (but not at 7:00 😉)

Ruby Clark Quick
Vice President, Member Service & Community Relations
Lumbee River EMC
Direct: 910-843-7922
Cell: 910-633-8566
Toll-Free: 800-683-5571, ext. 7922
Email: ruby.clark@lumbeeriver.com

LUMBEE RIVER EMC

Should have googled before she called

NOT

It's PAPER

I wasn't frustrated

Tyler Is NEW, and has NOT got the MEMO About Ruby

She's the VP ???

This whole exchange is Ruby documenting in an attempt to control the narrative




Mulligans
Tylor produced

Tylor had 4 things to do which communicated at 9 am)
(Text & phone call)

① Print table signs

② Print sign in sheet

③ Design mulligan ticket (I sketched an example)
* when he told ME
what type of paper I did
just send me what you have
and i'll print

④ Work with Derrick to ICE Drinks and coolers

[Ruby & Derrick did not bring enough ICE]

I RESPONDED BY TEXT — MORE Documentation

7:14





Ruby





Hey I saw your email. Tyler sent me this at 4:25 this afternoon so I think a lot is being lost in translation- I didn't talk to him after our convo. He and I discussed having something to place in their hands when they purchased but we didn't plan track it. When I first looked in the folder I had no idea what a mulligan was and what they were purchasing. I thought it just made sense to put something in their hands.

Inter-Departmental collaboration

Every change this year was about addressing pain points (doughnuts , the gifts, beer choices, pushing everyone to pay upfront etc). I personally want to keep you out of the weeds as much as possible- mulligans is in the weeds. You should be able to just show up tomorrow when you want to and not

7:48





Ruby

Tyler asked about paper this afternoon to print these on (how the whole conversation started). I don't know if he had already designed them or not. I didn't ask so I have no idea if he printed them.

I understand addressing pain points but I honestly do not see how mulligan tickets or muffins or previous gifts were pain points for the players. The beer, yes, and I knew about that one. I've been through many of these too. If the players had issues we wouldn't have a full tournament each year. But that is just my thought. At the end of the day I have no doubt it will be successful and the players will have a blast.

Last year sucked because she threw her direct Report under the bus

She does not value Inter-Departmental collaboration

Baseless !!!

And I understand the weed thing too but you and Tyler are both new in your roles and the department

7:48





Ruby

knew about that one. I've been through many of these too. If the players had issues we wouldn't have a full tournament each year. But that is just my thought. At the end of the day I have no doubt it will be successful and the players will have a blast.

And I understand the weed thing too but you and Tyler are both new in your roles and the department doesn't look or run like it has previously with lots of changes taking shape so there will be times I will be in the weeds as part of my job. (The coolers today are an example of that.) And I don't mind at all, again that's part of my job. Hopefully as time passes and everyone is trained I will be less in less in the weeds on most things, most of the time.

I AM NOT NEW to MANAGEMENT, Planning, or leading high functioning team (check my RESUME)

she offers to help but penalizes you when she has to help ???



I don't plan to be there first thing

**LUMBEE RIVER ELECTRIC MEMBERSHIP CORPORATION**

**Policy Bulletin No. 318**

**SUBJECT: ANTI-HARASSMENT**

## I. OBJECTIVES

A. To clearly state the Cooperative's prohibition of sexual harassment;

B. To clearly state the Cooperative's prohibition of harassment on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, protected veteran status, or any other legally protected status;

C. To clearly state the Cooperative's prohibition of unwelcome conduct that alters another employee's conditions of employment and/or creates an abusive or hostile atmosphere;

D. To clearly state the Cooperative's prohibition of conduct that unreasonably interferes with another employee's ability to perform his/her job;

E. To establish ***mandatory*** avenues for immediately reporting harassment;

F. To protect employees who make complaints of harassment and/or who participate in investigations of harassment from retaliation; and

G. To inform all employees that any violation of this policy may result in discipline up to and including termination.

## II. POLICY CONTENT

A. The Cooperative strictly prohibits sexual harassment and harassment on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, protected veteran status, or any other legally protected status.

B. Employees must immediately report all incidents of harassment to the Vice President of Human Resources and/or the President and CEO.

C. All employees are required to avoid offensive or inappropriate conduct.

D. The Cooperative will investigate all allegations of harassment in a prompt, thorough, and impartial manner, and protect the confidentiality of such investigations to the extent possible.

E. Any employee violating this policy will be subject to discipline up to and including termination.



Case 7:25-cv-01502-M-BM Document 6-2 Filed 11/19/25 Page 8 of 14

## III. PROVISIONS

A. "Harassment" is defined as conduct that denigrates or shows hostility or aversion toward an individual and that:

1. has the purpose or effect of unreasonably interfering with an individual's work performance;

2. has the purpose or effect of creating an intimidating, hostile, abusive or offensive work environment; or

3. otherwise adversely affects an individual's employment opportunities or work environment.

B. The following are examples of conduct that may violate this policy:

1. epithets, slurs, negative stereotyping, or threatening, intimidating, or hostile acts including, but not limited to, those that may relate to race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, veteran status, or any other legally protected status;

2. written or graphic material that denigrates or shows hostility or aversion toward an individual or group because of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, veteran status, or any other legally protected status, and that is placed on walls, bulletin boards, or elsewhere on the Cooperative's premises or circulated in the workplace;

3. disparate terms of employment based on the employee's protected status; or

4. bullying, which includes verbal abuse, embarrassment, unwelcome teasing, pranks, interference with work, and other forms of unwelcome conduct.

C. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome conduct directed at an individual because of his or her sex. Conduct may be considered sexual harassment when:

1. submission to or rejection of such conduct explicitly or implicitly affects an individual's employment;

2. such conduct unreasonably interferes with an individual's work performance; or

3. such conduct creates an intimidating, hostile, or offensive work environment.


Case 7:25-cv-01502-M-BM Document 6-2 Filed 11/19/25 Page 9 of 14

## III. PROVISIONS

A. "Harassment" is defined as conduct that denigrates or shows hostility or aversion toward an individual and that:

1. has the purpose or effect of unreasonably interfering with an individual's work performance;

2. has the purpose or effect of creating an intimidating, hostile, abusive or offensive work environment; or

3. otherwise adversely affects an individual's employment opportunities or work environment.

B. The following are examples of conduct that may violate this policy:

1. epithets, slurs, negative stereotyping, or threatening, intimidating, or hostile acts including, but not limited to, those that may relate to race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, veteran status, or any other legally protected status;

2. written or graphic material that denigrates or shows hostility or aversion toward an individual or group because of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, veteran status, or any other legally protected status, and that is placed on walls, bulletin boards, or elsewhere on the Cooperative's premises or circulated in the workplace;

3. disparate terms of employment based on the employee's protected status; or

4. bullying, which includes verbal abuse, embarrassment, unwelcome teasing, pranks, interference with work, and other forms of unwelcome conduct.

C. Sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other unwelcome conduct directed at an individual because of his or her sex. Conduct may be considered sexual harassment when:

1. submission to or rejection of such conduct explicitly or implicitly affects an individual's employment;

2. such conduct unreasonably interferes with an individual's work performance; or

3. such conduct creates an intimidating, hostile, or offensive work environment.

D. The following are examples of conduct that may constitute sexual harassment prohibited by this policy:

1. Unsolicited verbal sexual remarks (i.e., off-color jokes, stories, etc.);
2. Sexist remarks about a person's body or about sexual activities;
3. Pressure for sexual activity;
4. Physical assault or any unnecessary unwelcome touching;
5. Display of inappropriate images, videos, or recordings; or
6. Disparate terms of employment based on the employee's sex.

E. Harassment can occur in a variety of circumstances including, but not limited to, the following:

1. The harasser can be the victim's supervisor, a supervisor in another area or department, a co-worker, a Board member, an agent of the Cooperative, or a non-employee.
2. In some circumstances, the victim does not have to be the person harassed, but could be someone affected by the offensive conduct.
3. The victim, as well as the harasser, may be a woman or a man.
4. The victim does not have to be of the opposite sex from the harasser.

F. Any and all activities described in Sections III.A. through III.D. above are prohibited and will not be tolerated. However, the conduct described in these Sections are examples only and are not intended to be an all-inclusive list of what the Cooperative may determine to be harassment. Therefore, employees are ***required*** to immediately report all unwelcome conduct that unreasonably interferes with their ability to do their jobs, or that is in any way threatening, humiliating, demeaning or abusive.

G. ***Mandatory Reporting Requirement***

Any employee who feels he or she is a victim of sexual harassment or other types of harassment because of his/her race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, veteran status, or other legally protected status must immediately report offending conduct to the Vice President of Human Resources or the President and CEO. However, if the complaint involves the President and CEO, then the employee must report the harassment to the Chairman of the Board. Customary expectations with regard to "chain of command" do **not** apply to reports of harassment.

Any employee who observes or otherwise has reason to believe that harassment is occurring is required to report the conduct to the designated management official before the harassment becomes severe or pervasive. No employee will face retaliation for making a report under this policy.

All reports of harassment will be handled in a confidential manner to the extent possible.

H. Upon receipt of a report of harassment, the Cooperative shall conduct a prompt, thorough, and impartial investigation. Before completing the investigation, the Cooperative shall take appropriate measures to ensure that the alleged harassment does not continue.

As part of the investigation, the Cooperative will interview the employee who complained of harassment, the alleged harasser, and others who could reasonably be expected to have relevant information. The alleged harasser shall in no way have any direct or indirect control over the investigation. The Cooperative shall protect the confidentiality of complaints of harassment to the extent possible.

I. Any employee who makes a complaint of harassment or who participates in an investigation of harassment will be protected from retaliation.

J. Should the Cooperative, upon completion of the investigation, find that sexual harassment or harassment because of an individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, status as a protected veteran, or any other legally protected status has occurred in violation of this policy, it will take immediate and appropriate corrective action.

K. Any employee who has questions regarding harassment, who does not understand this policy, and/or who needs further explanation of this policy should contact the Vice President of Human Resources.

L. Any employee violating this policy will be subject to discipline up to and including termination.

## IV. RESPONSIBILITY

A. All employees shall be responsible for avoiding offensive or inappropriate conduct at work and for reporting incidents of harassment to management.

B. The Office of Human Resources shall provide mandatory training for all employees. Supervisors shall be responsible for educating employees about the Cooperative's anti-harassment policy.

C. The Vice President of Human Resources, President and CEO and Board of Directors shall be responsible for the administration of this policy.



Case 7:25-cv-01502-M-BM Document 6-2 Filed 11/19/25 Page 12 of 14

Any employee who observes or otherwise has reason to believe that harassment is occurring is required to report the conduct to the designated management official before the harassment becomes severe or pervasive. No employee will face retaliation for making a report under this policy.

All reports of harassment will be handled in a confidential manner to the extent possible.

H. Upon receipt of a report of harassment, the Cooperative shall conduct a prompt, thorough, and impartial investigation. Before completing the investigation, the Cooperative shall take appropriate measures to ensure that the alleged harassment does not continue.

As part of the investigation, the Cooperative will interview the employee who complained of harassment, the alleged harasser, and others who could reasonably be expected to have relevant information. The alleged harasser shall in no way have any direct or indirect control over the investigation. The Cooperative shall protect the confidentiality of complaints of harassment to the extent possible.

I. Any employee who makes a complaint of harassment or who participates in an investigation of harassment will be protected from retaliation.

J. Should the Cooperative, upon completion of the investigation, find that sexual harassment or harassment because of an individual's race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability status, status as a protected veteran, or any other legally protected status has occurred in violation of this policy, it will take immediate and appropriate corrective action.

K. Any employee who has questions regarding harassment, who does not understand this policy, and/or who needs further explanation of this policy should contact the Vice President of Human Resources.

L. Any employee violating this policy will be subject to discipline up to and including termination.

## IV. <u>RESPONSIBILITY</u>

A. All employees shall be responsible for avoiding offensive or inappropriate conduct at work and for reporting incidents of harassment to management.

B. The Office of Human Resources shall provide mandatory training for all employees. Supervisors shall be responsible for educating employees about the Cooperative's anti-harassment policy.

C. The Vice President of Human Resources, President and CEO and Board of Directors shall be responsible for the administration of this policy.


Case 7:25-cv-01502-M-BM Document 6-2 Filed 11/19/25 Page 13 of 14

D. The Board of Directors shall be responsible for any change or revision to this policy.

| | |
|---|---|
| Adopted: | Minutes of April 20, 1999 |
| Revised: | Minutes of August 15, 2000; Minutes of October 10, 2000; Minutes of October 18, 2005; Minutes of July 21, 2009; Minutes of November 18, 2014; Minutes of July 18, 2016; Minutes of October 20, 2020 |
| Reviewed: | Minutes of February 17, 2022<br>Minutes of July 18, 2023 |
| Approved: | Roger Oxendine, Secretary |


Case 7:25-cv-01502-M-BM Document 6-2 Filed 11/19/25 Page 14 of 14