IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| David L. Spencer, | C/A No.: 7:25-cv-01502-M-BM |
| Plaintiff, | |
| v. | DEFENDANT'S MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS |
| Lumbee River Electric Membership Corporation, | |
| Defendant. | |

## I. INTRODUCTION

**COMES NOW** Defendant Lumbee River Electric Membership Corporation ("the Cooperative" or "LREMC"), through the undersigned counsel, respectfully filing this memorandum of law in support of its Rule 12(b)(6) Motion to Dismiss the Complaint.

## II. NATURE OF THE CASE

Plaintiff David L. Spencer alleges that his former employer, Defendant Lumbee River Electric Membership Corporation, terminated him from his employment for reporting "harassment," and because of his race (Black) and sex, all in violation of Title VII of the Civil Rights Act of 1964. (Compl., ECF No. 1, pp. 1, 4, 6; Legal Memorandum, ECF No. 1-1).

## III. PLAINTIFF'S FACTUAL ALLEGATIONS

1. "Plaintiff was employed by Defendant and consistently performed his duties in a satisfactory manner."[1] (Compl., ECF No. 1, p.5).

---

[1] Notably, the alternative version of the Complaint Plaintiff served on LREMC on November 4, 2025, does not contain the same factual allegations as the Complaint filed with the Court. Instead, the served version simply state, "see attached," and relies exclusively on the legal memorandum attached to the Complaint. (*See* **Exhibit 1**, Served Version of the Complaint, with

2. "During the course of employment, Plaintiff filed a formal complaint of harassment against his immediate manager." (Compl., ECF No. 1, p.5). In the corresponding legal memorandum attached to Plaintiff's Complaint, Plaintiff further describes the report, in pertinent part, as follows:

> On May 16, 2024, Mr. Spencer . . . report[ed] harassing conduct by his supervisor, Ruby Clark Quick, to both the President and CEO, and the Vice President of Human Resources at LREMC.

(Legal Memorandum, ECF No. 1-1, paragraph 1). A copy of the "formal complaint of harassment" is attached to Defendant's Motion as **Exhibit 2**.

3. "On or about September 9, 2024," or nearly four months "after filing the complaint, Plaintiff was terminated." (Compl., ECF No. 1, p.5; *see also* Legal Memorandum, ECF No. 1-1, paragraph 2).

4. LREMC did not terminate his supervisor or anyone else. (Legal Memorandum, ECF No. 1-1, paragraph 4).

5. A copy of Plaintiff's EEOC Charge, also referenced in the Complaint (Compl., ECF No. 1, p. 5), is attached as **Exhibit 3**.

---

attachments; *compare* Complaint, ECF No. 1; and Legal Memorandum, ECF No. 1-1). Furthermore, the served version alleges discrimination based on "race" and "color," but not "gender/sex," and contains a different claim for relief. (*Compare* ECF No. 1, pp. 4, 6). The date under Section IV.B. is also stated differently. (*Compare* ECF No. 1, p. 5). Finally, Plaintiff signed the served version on "9/5/2025," as opposed to "8/29/2025" for the filed Complaint. (*Compare* ECF No. 1, p. 6). Curiously, however, Plaintiff served the original file-stamped cover page of the filed Complaint, without the ECF footer data, but served the attachments with the ECF footer data. Therefore, after filing the original Complaint, it appears that Plaintiff prepared and served a different complaint, substituted the file-stamped first page, and then obtained the separate attachments from the Pacer system for service with the doctored version of the Complaint. For purposes of the Motion to Dismiss, and in the absence of a proper amended Complaint, Defendant will address the original version of the Complaint on file with the Court.

## IV. ARGUMENTS

### 1. General Standards Governing Rule 12(b)(6)

Rule 12(b)(6) tests the legal and factual sufficiency of a Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-80, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-63, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To overcome a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted); *see Twombly*, 550 U.S. at 570; *Giarratano*, 521 F.3d at 302.

In reviewing the motion, facts and reasonable inferences are construed "in the light most favorable to [the nonmoving party]." *Massey v. Ojaniit*, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted). However, the court need not accept any "unwarranted inferences, unreasonable conclusions, or arguments" contained in the complaint. *Giarratano*, 521 F.3d at 302 (quotation omitted); *see Iqbal*, 556 U.S. at 678-79.

A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As explained in *Iqbal*, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557); *see also, e.g., Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments.") Instead, the plaintiff must rely on his specific factual allegations to nudge the claims beyond the realm of "mere possibility" into "plausibility." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678-79. "Determining whether a

complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The complaint fails as a matter of law "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

On the other hand, however, courts are not necessarily constrained by the written text of the complaint in reviewing a motion to dismiss for failure to state a claim. First, a court may also consider any materials "incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see* Fed. R. Civ. P. 10(c); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 2005). Second, the Court may take judicial notice of public records. *See, e.g.*, Fed. R. Evid. 201; *Tellabs. Inc. v. Makor Issues & Rts.. Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Third, the court may consider a moving party's supplemental documents, without converting the motion into one for summary judgment, if they are "integral to the complaint and there is no dispute about the document's authenticity" *Goines*, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Fayetteville Invs. v. Com. Builders. Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

For example, "the Court may consider plaintiff's EEOC charge attached to defendant's motion to dismiss without converting the motion to one for summary judgment." *Bittle v. Twiddy & Co. of Duck*, Case No. 2:16-CV-78-BO, 2017 U.S. Dist. LEXIS 94613, *5, n.1, 2017 WL 2673687 (E.D.N.C. June 20, 2017) (citing Fed. R. Civ. P. 10(c); *Am. Chiropractic Assoc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)); *see also, e.g., Herbert v. Horizon Coach Lines*, Case No. 3:15-CV-6-GCM, 2015 U.S. Dist. LEXIS 75794, 2015 WL 3649091, at *1, n.1

(W.D.N.C. June 11, 2015)("The Court may consider an EEOC charge without converting a motion to dismiss into one for summary judgment.").

### 2. Relaxed Pleading Standards for Actual Pro Se Litigants

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation and citation omitted).

However, the "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); the court is not "an advocate for a pro se litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978); and the court is not expected or required to "discern the unexpressed intent of the plaintiff[.]" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (*quoting Laber v. Harvey*, 438 F.3d 404, 413 n. 3 (4th Cir. 2006) (en banc)); *see also, e.g., Anderson v. Jordan*, Case No. 7:17-CV-112-BO, 2018 U.S. Dist. LEXIS 87707, *9-14, 2018 WL 2390582 (E.D. N.C. May 24, 2018)(Noting that "some threshold showing must be made to proceed to discovery").

Instead, like any other litigant, a pro se plaintiff must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Twombly*, 550 U.S. at 555). A pro se litigant must still plead "more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (*quoting Twombly*, 550 U.S. at 555). Ultimately, to survive a motion to dismiss, a pro se complaint must still "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted). The pro se litigant's complaint remains subject to dismissal for failure to state a claim. *See, e.g., Anderson v. DHHS/Central Reg'l Hosp.*, Case No. 5:24-CV-299-

BO-KS, 2025 U.S. Dist. LEXIS 27506, *12-13, 2025 LX 155580, 2025 WL 510387 (E.D.N.C. February 14, 2025).

3. **Limitations on Latitude Afforded to "Ghost Written" Pro Se Complaints**

Numerous federal district courts in the Fourth Circuit have addressed the persistent problem of "ghost writing" and its impact on federal litigation, including the concern that it "unfairly exploits the Fourth Circuit's mandate that the pleadings of pro se parties be held to a less stringent standard than pleadings drafted by lawyers."[2] *Adolphe v. Option One Mortg. Corp.*, Case No. 3:11-cv-418-RJC, 2012 U.S. Dist. LEXIS 92086, *5-6, n.1 (W.D.N.C. July 3, 2012); s*ee also, e.g., Hedgepeth v. Smoky Mt. Country Club Prop. Owners' Ass'n* (*In re Smoky Mt. Country Club Prop. Owners' Ass'n*), 622 B.R. 653, 656, 2020 U.S. Dist. LEXIS 172749, *7, 2020 WL 5633337, n.5 (W.D.N.C. 2020) ("For an attorney to 'ghost write' on behalf of a party she does not formally represent is not permitted."); *Greene v. US. Dep't of Educ.*, Case No. 4:13-cv-79, 2013 U.S. Dist. LEXIS 143678, 2013 WL 5503086, at *10 (E.D.VA Oct. 2, 2013) ("ghost-writing is in no way permissible in . . . any federal court" and constitutes an inexcusable abuse of leniency otherwise afforded to pro se litigants), *aff'd*, 573 F. App'x 300 (4th Cir. 2014); *Hernandez v. Mobile Link (N.C.) LLC*, Case No. 5:20-CV-00504-M, 2021 U.S. Dist. LEXIS 96773, *11-12, 2021 WL 2056979 (E.D.N.C. May 21, 2021) (order for supplemental briefing on question of whether pro se plaintiff was eligible for a deferential review.).

---

[2] Under the North Carolina ethics rules, "a lawyer may assist a pro se litigant without disclosing his assistance to the [North Carolina] court and without ensuring that the client discloses the assistance to the court unless the lawyer is compelled to make the disclosure by law or by a court order." 2008 Formal Ethics Opinion 3 (https://www.ncbar.gov/for-lawyers/ethics/adopted-opinions/2008-formal-ethics-opinion-3) However, that state ethics guidance leaves open the question of appropriate practices in federal court, and the approaches a federal district court may implement to address the misalignment of the pleading standards, rules, and practices between the state and federal court systems.

6

### 4. The Nature and Content of the Complaint Suggests that Plaintiff is Proceeding with the Assistance of Legal Counsel

Defendant concedes that Plaintiff's "formal complaint of harassment" (Exhibit 2), reflecting a layperson's writing style, reasonably appears to constitute Plaintiff's own writing and work product. However, Plaintiff was represented by an attorney once the dispute advanced to the EEOC. (ECF No. 1-2, p.2). Furthermore, in comparison to his own written grievance, and based on the text and structure of Plaintiff's Complaint, including the concise sentence structure, precise legal citations, artful pleading for relief, and the attached "legal memorandum," it would appear that Plaintiff is not proceeding wholly without the assistance of legal counsel in preparing his Complaint.[3] Therefore, since Plaintiff has had the benefit of legal counsel, he is not due the same leniency the Court would typically afford to a pro se litigant.

### 5. Plaintiff Fails to State a Claim for Retaliation in Connection with His Report Of "Harassment" Since He Makes No Allegation of Ever Reporting Civil Rights Violations

The federal courts "refuse to transmute . . . ordinary workplace disagreements between individuals of different races [or sexes] into actionable race [or sex] discrimination." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000). For example, in the absence of a discriminatory motive, Title VII provides no legal redress from "a tough, demanding supervisor" or the frustrations of working with a supervisor that is "often unreceptive to [an employee's] ideas, . . . blunt and even at times unfair," since these are precisely "the types of difficulties that . . . arise routinely in employment relationships":

> They are an inevitable by-product of the rough edges and foibles that individuals bring to the table of their interactions. Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion. Instead, legally sufficient

---

[3] In fact, for the version of the Complaint served on Defendant, Plaintiff relies exclusively on the legal memorandum as the support for his case.

> evidence is required to transform an ordinary conflict such as that between Hawkins and Price into an actionable claim of discrimination.

*Id.* at 282; *see also, e.g., Evans v. Int'l Paper Co.*, 936 F.3d 183, 192, (4th Cir. 2019) (requiring proof that "the harassment was based on [plaintiff's] gender or race," among other elements).

In this instance, Plaintiff claims he "filed a formal complaint of harassment against his immediate manager" and, thereafter, was terminated "in direct retaliation for filing the harassment complaint." (Complaint, ECF No. 1, p. 5) Then, as set forth in the legal memorandum attached to the Complaint, and after removing the arguments and conclusory language,[4] Plaintiff is left with the following assertions as his most developed factual allegation:

> On May 16, 2024, Mr. Spencer . . . report[ed] harassing conduct by his supervisor, Ruby Clark Quick, to both the President and CEO, and the Vice President of Human Resources at LREMC.

(Legal Memorandum, ECF No. 1-1, p. 1). Notably absent, however, is any claim that Plaintiff ever reported harassment *based on his race or sex*, or that Plaintiff had any grounds for any such reasonable belief; a mere reference to "harassment," standing alone, does not implicate civil rights.

Although the legal memorandum is also adorned with a range of other conclusory buzzwords and phrases – "harassing conduct," "retaliatory behavior," "hostile work environment," "questionable internal investigation based on an anonymous complaint," and "inconsistencies in internal procedures" – Plaintiff does not plead any specific facts to support these loaded characterizations. Ultimately, these naked assertions, labels and conclusions, reflecting what Plaintiff would like the facts to show and how he would attempt to describe or characterize the

---

[4] Mixing his facts and arguments, Plaintiff further contends that he "engaged in a protected activity under Title VII" and "[t]his report, and the formal grievance that followed constitute activities protected under federal law." *See, Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (court "need not accept . . . unwarranted inferences, unreasonable conclusions, or arguments.")

unstated facts, are not themselves facts and do not demonstrate the plausibility of any claim. *Twombly*, 550 U.S. at 555 (rejecting "labels and conclusions"); *Iqbal*, 129 S.Ct. at 1949.

Plaintiff's Complaint cannot be saved even if the Court were to afford him latitude through additional consideration of the "formal grievance" (Exhibit 2, Complaint/Grievance) referenced in the Complaint. That document shows that, in substance, Plaintiff was complaining about completely frivolous disagreements with his supervisor over the use of "mulligans" at the Cooperative's charity golf tournament, as opposed to federal civil rights issues or concerns. At the center of his grievance, Plaintiff believes he had better ideas for selling mulligans at the golf tournament:

> In previous years, LREMC would charge attendees $5 per mulligan but would not give them anything but a thank you. This year I wanted at the very least to put something in their hands to commemorate the transaction. On some level Ruby agreed because she made the suggestion to use white tickets, which I thought would be confusing as we already were using red tickets for the 50/50 raffle and door prizes. She also suggested coasters, keeping in mind the players were getting ready to play golf. At 2 mulligans per player, some teams would walk away with a stack of 8 coasters – very odd. My approach was the logical and practical one but because it was not hers she had a problem with it.

(Exhibit 2, Complaint/Grievance) *See, generally, Kelly v. Town of Abingdon*, 90 F.4th 158, 168 (4th Cir. 2024) (federal anti-discrimination laws do not address personality conflicts, technical difficulties, or provide relief from challenging work assignments).

As reflected in the grievance, Plaintiff pressed tropes[5] that his supervisor, Ms. Ruby Quick, was "nasty" and "irate," "could not be reasoned with," and only wanted "to show that she was in charge." He asserts that "[h]er response [to their disagreement] was extreme and unwarranted."

---

[5] "[H]istorically, 'nasty' has been disproportionately used to silence and demean women who challenge societal norms." https://www.scifidimensions.com/what-is-the-deeper-meaning-of-nasty/ *See, also, e.g.*, https://therepproject.org/10-media-tropes-that-just-need-to-die-already/ (referencing "The 'Bitchy' Boss: 'I'm a woman, and I'm in charge. So of course that means I'm mean and nasty.'"); https://time.com/22004/how-to-not-sound-like-a-sexist-jerk-even-if-youre-a-woman/.

Plaintiff further complains that Ms. Quick "is a bully who lacks basic people skills and does not know how to talk to people," "believes everyone around her is incompetent," is incapable of expressing her thoughts in a "peaceful and coherent manner," "lacks the basic human decency of treating others with respect," and "does not value the feedback of her staff or other colleagues in this organization."[6] Again, however, Plaintiff does not allege any violation of his civil rights, including any form of unlawful disparate treatment based on race or sex, or any harassment based on those protected categories. Instead, on the critical question of motive, Plaintiff reported and alleged the following:

> I believe her true agenda was to remind me that *she is the boss,* and regardless of how I felt about her ideas, it's *best I get in line and do whatever she says no matter how stupid I think it i*s.

(emphasis added). Therefore, Plaintiff completely fails to set forth specific factual allegations that would nudge his claims beyond a mere possibility, if that, into proof of actual retaliatory discrimination.

### 6. Plaintiff Fails to State a Claim for Retaliation Where Plaintiff's Timing Allegation Is Insufficient to Support an Inference of Causation.

Standing alone, a gap of three to four months between protected activity and an adverse action dispels any inference of causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001); *Shields v. Fed. Express Corp.*, 120 F. App'x 956, 963 (4th Cir. 2005); *Pascual v. Lowe's Home Centers, Inc*., 193 Fed. Appx. 229, 234 (4th Cir. 2006)

---

[6]Given the blatantly insubordinate nature of his statements against his supervisor, the Cooperative had every right to immediately terminate Plaintiff at that time but, instead, demonstrated patience and extended grace in continuing his employment. *See, e.g., Calhoun v. United States DOL*, 576 F.3d 201, 214 (4th Cir. 2009 (upholding termination based on insubordination); *Buck v. Modine Mfg. Co*., 776 F. Supp. 3d 357, 374-375 (W.D.Va March 31, 2025 (recognizing sarcastic, insubordinate and disruptive behavior as legitimate grounds for termination.); *Campbell v. Enter. Holdings*, Case No. 5:11-CV-424-FL, 2013 U.S. Dist. LEXIS 132022, *21, 2013 WL 5216735 (E.D.N.C. September 16, 2013) (insubordination as legitimate grounds for termination).

(temporal proximity insufficient where "at least three to four months separated the termination of [plaintiff's] employment and the claimed protected activities"); c*ompare Alexander v. Bloomingdale's, Inc.*, Case No. PWG-17-3283, 2019 U.S. Dist. LEXIS 83412, 2019 WL 2162286, at *13 (D. Md. May 17, 2019) (unpublished), *aff'd,* 780 F. App'x 48 (4th Cir. 2019) ("This Court and the Fourth Circuit have held that approximately two months may be sufficient temporal proximity to establish a causal relationship.")

In this instance, Plaintiff relies on the "[t]he proximity between the protected grievance (May 2024) and the termination (September 2024), along with retaliatory conduct and inconsistencies in internal procedures" (Legal Memorandum, ECF No. 1-1, paragraph 3), to support his claim that "his termination . . . was in direct retaliation for filing the harassment complaint." (Compl., ECF No. 1, p.5). However, absent a forecast of other substantial evidence, the four-month gap cannot support any reasonable inference that LREMC terminated Plaintiff's employment based on his complaint about his supervisor.

Admittedly, Plaintiff's attached legal memorandum provides the following:

2.  Adverse Employment Action

Following the protected activity, Mr. Spencer was subjected to retaliatory behavior, including a hostile work environment, a questionable internal investigation based on an anonymous complaint, and ultimately, termination on September 9, 2024. These constitute adverse employment actions.

(Legal Memorandum, ECF No. 1-1, paragraph 2).

However, Plaintiff does not plead any specific facts in support of these characterizations and conclusions. For example, Plaintiff fails to identify who allegedly created a "hostile work environment," what they did, when and where any alleged events occurred, whether there was any unlawful element to the conduct, what facts support any inference of a causal connection, whether there were any witnesses, and whether he reported any objectionable events to anyone. Instead,

on the contrary, Plaintiff defeats any suggestion of causation though his admission of an anonymous complaint against him and a corresponding internal investigation.

### 7. Plaintiff's Retaliation Allegations Will Not Support Separate and Distinct Claims for Race and Sex Discrimination

Retaliation is a separate and distinct cause of action under Title VII, as compared to race, sex, or other discrimination claims. *Brown v. TWA*, 127 F.3d 337, 342 (4th Cir. 1997); *Graves v. Dillon Cnty. Bd. of Educ.*, Case No. 4:14-CV-650-PMD-KDW, 2015 U.S. Dist. LEXIS 2950, 2015 WL 139492, at *1 (D.S.C. Jan. 12, 2015) ("distinct causes of action"). These differences are reflected in the fact that Title VII's anti-retaliation provisions are contained in an entirely separate section of the statute, distinct from the sections addressing other types of discrimination. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) (noting statutory distinctions); *see Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476 (8th Cir. 2010) (comparing provisions to conclude that "[r]etaliation is a cause of action under Title VII separate and distinct from sex discrimination."). The retaliation theory addresses different harms and protects different interests, compared to other types of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). Finally, the theories are governed by different elements and causation requirements. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (stating different elements of retaliation and discrimination claims); *Nassar*, 570 U.S. at 360 (comparing but-for causation and motivating factor standard). Therefore, Plaintiff cannot support a separate discrimination claim through an attempted retaliation claim. Instead, he is

required to plead a discrimination claim that stands on its own, under the pleading requirements for such claims.

> **8. Plaintiff Fails to Establish Any Threshold Showing That LREMC Terminated His Employment Based on His Race or Sex.**

In his Complaint, Plaintiff fails to identify *any* facts relating to any allegation of discrimination based on his race or sex, and seemingly makes no attempt to state any such claim beyond checking the box under Section III.D. of the pro se complaint form. (Compl., ECF No. 1, pp. 5-6). Instead, Plaintiff argues that "his termination . . . was in direct retaliation for filing the harassment complaint" while concluding that "Defendant's conduct constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), which prohibits an employer from retaliating against an employee."

Moving to his attached legal memorandum, Plaintiff states the following:

> 4. Disparate Treatment and Discrimination
>
> Mr. Spencer was the only Black male and the only individual terminated in connection with the events described. In contrast, his supervisor, who had multiple complaints filed against her – remained employed. This indicates racially motivated disparate treatment in violation of Title VII.

(Legal Memorandum, ECF No. 1-1, p. 1).

However, starting with the most obvious point, Plaintiff mentions race discrimination in this memorandum but does not mention sex; the mere fact that his supervisor was a woman is insufficient to state a claim for sex discrimination. Indeed, Plaintiff completely removed the claim for sex discrimination from the doctored version of the Complaint he ultimately served on Defendant.

On the question of race, and recognizing that he is Black, Plaintiff states that he was the only person terminated for reporting harassing conduct by his supervisor. (Compl., ECF No. 1-1, paras. 1. 5). Under this theory, at best, Plaintiff seems to suggest that the Cooperative retaliated

against him because he is Black, but perhaps, did not retaliate against his supervisor. However, he fails to allege that his supervisor ever engaged in the same conduct or plead any other facts suggesting that his supervisor could be seen as a proper comparator for a disparate treatment case. *Seabrook v. Driscoll*, 148 F.4th 264, _____ (4th Cir. 2025) (plausibility of disparate treatment claim depends upon whether comparator is similarly situated); *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 573 (4th Cir. 2023) ("the value of a similarly situated comparator comes from the fact that we can assess disparate treatment after eliminating the obvious explanation for the disparity.").

Therefore, since Plaintiff fails to present any set of facts plausibly suggesting sex or race discrimination, and instead specifically pleads that he was terminated in retaliation for reporting "harassment," his disparate treatment claims of discrimination fail as a matter of law and should be dismissed.

## CONCLUSION

Plaintiff fails to plead factual content that would allow the Court to draw reasonable inferences of unlawful employment discrimination. Therefore, based on the authorities and arguments set forth above, Defendant respectfully moves the Court to dismiss all claims set forth in the Complaint with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## CERTIFICATE OF WORD COUNT

Counsel hereby certifies that that this brief (including heading, body and footnotes, but excluding signature block and required certificates) contains 4,497 words and complies with the requirements of Local Rule 7.2(f), concerning limitations on the length of briefs.

Respectfully filed this the 19th day of November 2025.

/s/Aaron M. Christensen
Aaron M. Christensen
N.C. Bar No. 21663
Smith & Christensen, PLLC
P.O. Box 220247
Charlotte, North Carolina 28222
Phone: 704.927.2042
E-mail: christensen@smithchrist.com
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| David L. Spencer,<br><br>    Plaintiff,<br><br>v.<br><br>Lumbee River Electric Membership Corporation,<br><br>    Defendant. | C/A No.: 7:25-CV-01502-M<br><br>DEFENDANT'S MEMORANDUM<br>IN SUPPORT OF<br>RULE 12(b)(6) MOTION TO DISMISS |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing *Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss* in the above-entitled proceeding, has this day been served upon Plaintiff via ECF; via email (its_dynamic@yahoo.com); and via US Mail, addressed as follows:

    David Spencer
    12721 Blues Farm Rd
    Laurinburg, NC 28352

Copies of cases identified through LEXIS citations are also served on Plaintiff via an emailed Dropbox link.

Dated this the 19th day of November 2025.

                                              /s/Aaron M. Christensen
                                              Aaron M. Christensen
                                              N.C. Bar No. 21663
                                              Smith & Christensen, PLLC
                                              P.O. Box 220247
                                              Charlotte, North Carolina 28222
                                              Phone: 704.927.2042 (direct)
                                              E-mail: christensen@smithchrist.com
                                              *Attorney for Defendant*